NUMBER 13-10-685-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

EX
PARTE GEORGE GARZA III

                                                                                                                     
  

 

On appeal from the 105th
District Court 

of Kleberg County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Justices
Benavides, Vela, and Perkes  

Memorandum Opinion by
Justice Vela

                                                                                                                                    

            Applicant, George Garza III,
appeals from the trial court's order denying the relief he requested in a
pretrial application for writ of habeas corpus.  In a single issue, he contends
article 17.151 of the Texas Code of Criminal Procedure mandates his release
from pretrial incarceration.  See Tex.
Code Crim. Proc. Ann. art. 17.151 (West Supp. 2010).  We affirm.

I. Background

            On November 2, 2010, Garza filed a pretrial
application for writ of habeas corpus pursuant to article 17.151 of the Texas
Code of Criminal Procedure.  In his writ application, Garza alleged:  (1) he is
unlawfully restrained of his liberty by the Kleberg County Sheriff, having been
arrested and confined for the offense of capital murder; (2) he is presently
confined in the Kleberg County Jail pursuant to a $300,000 bond; (3) he has
been continuously detained in jail on this charge since his arrest on August 2,
2010; (4) over ninety days have elapsed since his arrest and confinement; (5)
no indictment has been returned in Kleberg County; (6) because no indictment
has been returned, the State is not now, and has not been ready for trial,
within the time specified by article 17.151; and (7) because of the State's
failure to be ready for trial within the specified time period, article 17.151
mandates that (a) he be released on a personal bond or (b) the trial court
should reduce the amount of bond to an amount he can post.  Two days after
Garza filed his writ application, a Kleberg County Grand Jury indicted him for
the capital murder of Susan Rousseau.  See Tex. Penal Code Ann. § 19.03 (West 2003).

On December 9, 2010, the trial court
conducted a hearing on Garza's pretrial application for writ of habeas corpus. 
During that hearing, defense counsel argued the State violated article 17.151
by failing to indict Garza within ninety days after the date he was arrested. 
Thus, defense counsel argued that Garza is "entitled to bond at this
time."

The State conceded that Garza's arrest
date and the date of his indictment were more than ninety days apart.  However,
the State argued that article 1, section 11 of the Texas Constitution
"also provides that a defendant who is charged with a capital murder where
the proof is evident is not entitled to bond . . . ."[1] 
The
State's attorney advised the court that the evidence "will establish that
the Defendant will be convicted should this case go to trial and that the death
penalty is likely as well."

No witnesses testified during this
hearing; however, the trial court admitted Garza's affidavit into evidence. 
The affidavit stated, in relevant part that

I [George Garza] have
been continuously incarcerated in the Kleberg County Jail since August 2, 2010
pursuant to a complaint charging me with Capital Murder.  I have been told that
I was indicted for Capital Murder by a Kleberg County Grand Jury on November 4,
2010.

 

            I am
indigent and without means of making a bond in any amount.  I own no cash,
stocks, bonds, real estate, investment securities, motor vehicle or any other
personal property of substantial value.  I have nothing to sell to secure any
funds.  I do not have any monies on deposit in any bank.  I am not the
beneficiary of any trust.  I do not have any balance in my commissary account
at the Kleberg County Jail.  I do not know of any funds that will become
available to me within the foreseeable future.  I am married and have two
children.  I was gainfully employed with a landscape company before my arrest.

 

            My mother
is deceased and my father is unable to provide any financial assistance at this
time.

 

            I am
unable to pay for a lawyer to assist me in this matter and have been given a
court appointed lawyer.

 

            I promise
that if released on bond I will appear as required by the Court . . . .

 

After hearing argument from both sides,
the trial court stated:

The Court finds that
this defendant was in custody for more than ninety days at the time that the
Indictment was returned by the Grand Jury of Kleberg County.  The Court also
finds that the State had the opportunity to take appropriate measures to move for
the denial of bail of this defendant as provided by law.  The Court also finds
that the State made no, took no action to have this Court deny bail to this
defendant in the manner provided by law.  The Court finds that bail was set at
$300,000.  The Court finds that that is an appropriate amount of bail in this
case and will deny the request to reduce bail from that amount.  The Defendant
has the opportunity to file a subsequent request at a later point in time
should he choose to do so.  In the meantime, bail will remain at $300,000 . . .
.

 

            On December 10, 2010, the trial court signed
an order denying the relief requested in the pretrial application for writ of
habeas corpus.  On December 15, 2010, the trial court signed an order, stating
in relevant part, that Garza was indigent.  This appeal followed.

II. Discussion

            By a single issue, Garza contends article
17.151 of the Texas Code of Criminal Procedure mandates his release.

A. Standard of Review

            We review a trial court’s decision to grant
or deny a writ of habeas corpus for an abuse of discretion.  Ex parte
Wheeler, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); Jaime v. State,
81 S.W.3d 920, 925 (Tex. App.—El Paso 2002, pet. ref’d).  To prevail on a writ
of habeas corpus, the proponent must prove the allegations by a preponderance
of the evidence.  Ex parte Cummins, 169 S.W.3d 752, 757 (Tex. App.—Fort
Worth 2005, no pet.); see Ex parte Thomas, 906 S.W.2d 22, 24 (Tex. Crim.
App. 1995).

B. Analysis

Article 17.151 provides, in relevant
part:

A defendant who is
detained in jail pending trial of an accusation against him must be released
either on personal bond or by reducing the amount of bail required, if the
state is not ready for trial of the criminal action for which he is being
detained within:

 

 

(1)  90 days from the
commencement of his detention if he is accused of a felony[.]

 

Tex. Code Crim. Proc. Ann.
art. 17.151, § 1(1).  Garza argues that under this statute, "[a]n indigent
defendant is entitled to release on a personal recognizance bond" and that
"[i]t is also mandated by court decision."  (citing Ex parte Rowe,
853 S.W.2d 581 (Tex. Crim. App. 1993)).

         In Rowe, the defendant sought release
from pretrial detention based upon article 17.151 because the State failed to
indict him within the ninety-day period that followed his incarceration.  853
S.W.2d 581, 581–82 (Tex. Crim. App. 1993).  The court of criminal appeals
concluded that article 17.151 requires a trial court to reduce a defendant's
bail to an amount the record reflects that he or she can afford, or to release
a defendant on personal bond when the record reflects that he or she cannot
make any bond.  Id. at 582 & n.1; see Tex. Code Crim. Proc. Ann. art. 17.151.

            A court's discretion in fixing a defendant's
bail is governed by article 17.15 of the Texas Code of Criminal Procedure,
which contains rules for fixing the amount of a defendant's bail.  See Tex. Code Crim. Proc. Ann. art. 17.15
(West 2005).  In May 1993, when the court of criminal appeals reached its
decision in Rowe, article 17.15 allowed but did not require trial courts
to consider the future safety of a victim of the respective alleged offense in
fixing the defendant's bail.  See Act of May 23, 1985, 69th Leg., R.S.,
ch. 588 § 2, 1985 Tex. Gen. Laws 2219 (amended 1993) (current version at Tex. Code Crim. Proc. Ann. art. 17.15
(West 2005)).  At that time, the statute was silent with respect to whether a
trial court could consider community-safety concerns in determining the question
of bail.  After the court of criminal appeals decided Rowe, the Texas
Legislature amended article 17.15.  The amended version of the statute
applicable in Garza's case, places a mandatory duty on courts to consider the
future safety of the community in fixing the amount of a defendant's bail.  See
Act of May 22, 1993, 73rd Leg., R.S., ch. 396 § 1, 1993 Tex. Gen. Laws 1694,
1695; see also Tex. Code Crim.
Proc. Ann. art. 17.15 (stating that "[t]he amount of bail to be
required in any case is . . . to be governed . . . by the following rules:  . .
. 5.  The future safety of a victim of the alleged offense and the community
shall be considered.").

            Article 17.15 applies to all bail hearings.  See
Tex. Code Crim. Proc. Ann. art.
17.15.  "By placing a mandatory duty on trial courts to consider the
safety of the victim and the safety of the community in fixing bail in all
cases, the Legislature requires trial courts to consider a factor that is not
related to the amount the defendant can afford to pay."  Ex parte
Matthews, 327 S.W.3d 884, 887 (Tex. App.—Beaumont 2010, no pet.).  In Matthews,
the court stated:

We doubt that the
Legislature intended to mandate trial courts to release defendants on bail on a
personal bond or based solely on the amount they can afford in cases in which
the defendant, although unable to pay a significant bail, represents a real
threat to his victim or to the community; these are considerations that extend
beyond the criteria of article 17.151 § 1 which focuses only upon the
defendant's ability to pay.

 

Id. at 887.

            The legislative mandate requiring trial
courts to consider victim and community safety extends to "any case,"
which includes a release on bail that is sought based on the State's delay in
bringing the defendant to trial.  Id.; see Tex. Code Crim. Proc. Ann. art. 17.15. 
Nevertheless, when an accused "has been incarcerated and there has been a
ninety-day period of delay in which the State has not announced ready for
trial, the trial court must either release the defendant on a personal bond or
allow the defendant to secure his release by setting a bail in some
amount."  Matthews, 327 S.W.3d at 887–88.  In fixing the amount of
bail in a case to which article 17.151 applies, "trial courts have been
authorized to consider victim and community safety concerns in determining the
amount of bail that is appropriate to require."  Id. at 888.

            In this case, the trial court could
reasonably infer that community-safety concerns existed, which then allowed it
to exercise its discretion in fixing Garza's bail at $300,000.  Orders setting
bail are reviewed on appeal to determine whether the trial court abused its
discretion.  See Ex parte Ruiz, 129 S.W.3d 751, 753 & n.2 (Tex.
App.—Houston [1st Dist.] 2004, no pet.) (citing Ex parte Rubac, 611
S.W.2d 848, 849 (Tex. Crim. App. 1981)).

            In determining Garza's bail, the trial court
had before it the sworn affidavit[2]
of Bradly Lile, a criminal investigator who conducted an investigation of
Rousseau's murder.  Officer Lile stated that on December 7, 2005, Rousseau's
body was discovered in her trailer.  She had been "bludgeoned" to
death with a baseball bat, and the phone line to her trailer had been "pulled
out."  At some point after the murder, a "tipster" called the
crime stoppers's hotline and stated that Garza "had confided that he had
struck a female with a bat in Kingsville" and that "Garza was
desperate to leave the area."  On August 2, 2010, Garza agreed to an interview
with Texas Ranger Pauska and Detective Salinas.  During the interview, Garza
stated that a woman drove him to a Kingsville trailer park, pointed to a
trailer, and told him there was money inside the trailer.  After Garza
"forcibly pulled open the trailer door," a person inside the trailer
struck him with a pipe.  Garza grabbed the pipe from the person, struck the
person with it, and fled the scene.

            Officer Lile's affidavit was sufficient to
establish that community-safety concerns were implicated by Garza's possible
release and that Garza was desperate to leave the area.  His affidavit raises a
reasonable inference that if Garza was to secure his release, he would be
likely to abscond or pose a danger to the community.  From this evidence, the
trial court could have concluded that Garza would likely disregard conditions
of bond were he to gain his release on a personal bond or a bond of less than
$300,000.

            We conclude that the trial court could have
properly considered community-safety concerns in determining the required
amount of Garza's bail.  In light of the community-safety concerns presented by
Garza's release, we conclude that Garza's bail of $300,000 is reasonable.  See
Matthews, 327 S.W.3d at 888 (holding that trial court did not abuse its
discretion by setting bail at $475,000 for murder defendant).  We overrule the
sole issue for review.

III. Conclusion

            We affirm the trial court's order.

 

                                                                                         ROSE
VELA

                                                                                         Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the   

30th day of August,
2011.









[1]
See Tex. Const. art. 1, §
11.





[2]
This affidavit was filed with the trial court on October 5, 2010 and is
included in the appellate record.