**Ex Parte Shane Jermaine MATTHEWS.**

No. 09–10–00238–CR.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 11, 2010.

Decided Nov. 24, 2010.

Dennis D. Horn, Kirbyville, for appellant.

Steven Hollis, Crim. Dist. Atty., Jasper, for state.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

A Jasper County, Texas, grand jury indicted Shane Jermaine Matthews for causing the death of Jessie Palamo, Jr. The State alleged that Shane shot Palamo with a firearm in the course of committing or attempting to commit a robbery. Shane was held in jail without bail for more than ninety days. In response to Shane's application for habeas relief requesting that he be released or that the trial court set his bail, the trial court set Shane's bail at $475,000. Shane appeals from the trial court's order setting his bail at $475,000. We affirm.

### Background

In January 2010, a Jasper County grand jury indicted Shane for capital murder. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2010). Three others were also arrested and charged with capital murder in connection with Palamo's death. On January 14, 2010, the trial court conducted a bond hearing. At the January bond hearing, Captain Robert Walker of the Jasper County Sheriff's Department testified that Shane would probably not appear for trial if the trial court were to allow his release on bond. Walker's opinion was based on the strength of the State's case against Shane and Shane's criminal history. The record now before us does not contain a written order follow-

ing the January hearing, but the State does not dispute that the trial court did not allow Shane's release on bail following the January hearing.

In April 2010, Shane filed an application for writ of habeas corpus, and he requested that the trial court grant his release on a personal bond or "set the amount of bail required for his release." According to the application, Shane had been incarcerated for ninety days or more, and during that time, the State was not ready for trial. *See* Tex.Code Crim. Proc. Ann. art. 17.151 § 1(1) (West Supp. 2010).[1] During the hearing, the State conceded that it was not ready for trial. The application further asserts that proof of Shane's guilt was not evident nor had the State established the likelihood that Shane would receive a death sentence upon his conviction. *See* Tex. Const. art. I, § 11 (West 2007) (providing right to release upon posting bail except for cases of capital offenses when the proof is evident).

▪▪ "[T]he State has the burden to establish that the proof is evident by producing 'evidence [that] is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense of capital murder has been committed; that the accused is the guilty party; and that the accused will not only be convicted but that the jury will return findings which will require a sentence of death.'" *Ex parte Richardson,* 750 S.W.2d 896, 897 (Tex.App.-Amarillo 1988, pet. ref'd) (quot-

ing *Ex parte Wilson,* 527 S.W.2d 310, 311 (Tex.Crim.App.1975)). The State's burden of proof requires that the State not only introduce evidence that the jury would convict the accused, but that they would also return the findings required to impose a death sentence. *Ex parte Alexander,* 608 S.W.2d 928, 930 (Tex.Crim.App.1980).

In May 2010, the trial court conducted a hearing on Shane's application for writ of habeas corpus. The trial court took judicial notice of Captain Walker's prior testimony for the purpose of the May 2010 hearing. During the May hearing, Shane testified about his criminal history, his sporadic work history, his lack of community ties to Jasper County, and his inability to make bail. Shane further explained that he would be required to rely on his family to pay his bail, and he also testified that the State had not informed him about whether it intended to pursue a death penalty claim. John Matthews, one of the others the State indicted for Palamo's murder, also testified at the hearing. John explained that in a prior hearing involving his case, the prosecutor made statements tending to reflect some degree of doubt about whether the State intended to seek the death penalty against him. During the January and May hearings, the State did not put on evidence that it intended to seek a death sentence. At the conclusion of the hearing, the trial court fixed Shane's bail at $475,000.

---

1. In 2005, the Texas Legislature amended article 17.151 to allow for an exemption to the mandatory release of a defendant who is being detained for violating a condition of a previous release related to the safety of a victim of the alleged offense or to the safety of the community. Act of May 10, 2005, 79th Leg., R.S., ch. 110, § 1(4), 2005 Tex. Gen. Laws 206; Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 599, 79th Leg., R.S. (2005); House Comm. on Criminal Juris- prudence, Bill Analysis, Tex. S.B. 599, 79th Leg., R.S. (2005). The purpose of S.B. 599 was to allow a judge the discretion to deny a defendant's request for release on bond if the defendant had violated a condition of his original bond. House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. S.B. 599, 79th Leg., R.S. (2005). Prior to S.B. 599, a trial judge's only recourse was to set a higher bond. *Id.*

## Excessive Bail

■ In a single point of error, Shane argues that his bail is excessive. According to Shane, the trial court is required to set his bail in an amount that he can afford so that he can secure his release from confinement. *See* Tex.Code Crim. Proc. Ann. art. 17.151; *Rowe v. State*, 853 S.W.2d 581, 582 (Tex.Crim.App.1993). During the May hearing, Shane's attorney argued that Shane should be released on a bond of $50,000.

Article 17.151 provides: "A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within[ ] 90 days from the commencement of his detention if he is accused of a felony[.]" Tex. Code Crim. Proc. Ann. art. 17.151 § 1(1). In support of his argument, Shane relies on *Rowe v. State*, a Court of Criminal Appeals case decided in 1993. In *Rowe*, the State did not indict Rowe within the ninety-day period that followed Rowe's incarceration. *Rowe*, 853 S.W.2d at 581. The Court of Criminal Appeals concluded that article 17.151 requires a trial court to reduce a defendant's bail to an amount the record reflects that he can afford, or to release a defendant on personal bond where the record reflects that he cannot make any bond. *Id.* at 582 & n. 1; *see* Tex.Code Crim. Proc. Ann. art. 17.151.

Generally, a court's discretion in fixing a defendant's bail is governed by article 17.15, which contains rules for fixing the amount of a defendant's bail. In May 1993, when the Court of Criminal Appeals reached its decision in *Rowe*, article 17.15 allowed but did not require trial courts to consider the future safety of a victim of the respective alleged offense in fixing the defendant's bail. *See* Act of May 23, 1985, 69th Leg., R.S., ch. 588, § 2, 1985 Tex. Gen. Laws 2219 (amended 1993) (current version at Tex.Code Crim. Proc. Ann. art. 17.15 (West 2005)). At that time, the statute was silent with respect to whether a trial court could consider community safety concerns, such as the safety of witnesses to the alleged offense, in determining the question of bail. After the Court of Criminal Appeals decided *Rowe*, the Legislature amended article 17.15. The amended version of the statute applicable in Shane's case places a mandatory duty on courts to consider the future safety of the community in fixing the amount of a defendant's bail. *See* Act of May 22, 1993, 73rd Leg., R.S., ch. 396 § 1, 1993 Tex. Gen. Laws 1694, 1695.

Article 17.15 applies to all bail hearings. *See* Tex.Code Crim. Proc. Ann. art. 17.15. By placing a mandatory duty on trial courts to consider the safety of the victim and the safety of the community in fixing bail in all cases, the Legislature requires trial courts to consider a factor that is not related to the amount the defendant can afford to pay. We doubt that the Legislature intended to mandate trial courts to release defendants on bail on a personal bond or based solely on the amount they can afford in cases in which the defendant, although unable to pay a significant bail, represents a real threat to his victim or to the community; these are considerations that extend beyond the criteria of article 17.151 § 1 which focuses only upon the defendant's ability to pay.

The Legislature's mandate requiring trial courts to consider victim and community safety extends to "any case," which we believe includes a release on bail that is sought based on the State's delay in bringing the defendant to trial. *See* Tex.Code Crim. Proc. Ann. art. 17.15. Nevertheless, in cases where the defendant has been incarcerated and there has been a ninety-

day period of delay in which the State has not announced ready for trial, the trial court must either release the defendant on a personal bond or allow the defendant to secure his release by setting a bail in some amount. In fixing the amount of bail in a case to which article 17.151 applies, trial courts have been authorized to consider victim and community safety concerns in determining the amount of bail that is appropriate to require.

In the case before us, there was testimony from which the trial court could reasonably infer that community safety concerns existed, which then allowed it to exercise its discretion in fixing Shane's bail at $475,000. Orders setting bail are reviewed on appeal to determine whether the trial court abused its discretion. *See Ex parte Ruiz*, 129 S.W.3d 751, 753 & n. 2 (Tex. App.-Houston [1st Dist.] 2004, no pet.) (citing *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex.Crim.App.1981)).

In determining Shane's bail, the trial court could consider the testimony of Captain Walker, a criminal investigator who conducted an investigation of Palamo's murder. Walker's testimony was before the court at the January hearing because the trial court took judicial notice of his testimony during the May hearing. Captain Walker's testimony was sufficient to establish that community safety concerns were implicated by Shane's release. According to Captain Walker, Palamo was shot and killed during a drug deal that was also intended to be a robbery. Captain Walker testified that witness statements revealed that Shane was one of three males present in the motel room when Palamo was murdered, that all three males had a weapon on them at the time of the murder, and that they left the scene wearing ski masks. Walker also related that his investigation indicated that Shane was a member of a gang known for "[r]obbing, stealing, committing murders, [and] thefts." When Shane testified, he did not deny his gang membership or dispute the gang's reputation. Thus, this evidence raises a reasonable inference that were Shane to secure his release on the bail he proposed of $50,000, the witnesses in Shane's case were likely to face threats and intimidation for cooperating with the State.

The trial court also heard evidence relevant to Shane's violent nature. Shane testified that he had been convicted in 2003 for assault with a deadly weapon, a case that resulted in a five-year sentence. Shane explained that after his release from prison, he was arrested and then indicted for illegally possessing a firearm. On the date Palamo was murdered, Shane was out on bond pending trial of the firearms charge. From this evidence, the trial court could have concluded that Shane would likely disregard conditions of bond were he to gain his release on a bond of $50,000.

We conclude that the trial court properly considered community safety concerns in determining the required amount of Shane's bail. In light of the community safety concerns presented by Shane's release, we conclude that Shane's bail of $475,000 is reasonable and that Shane has failed to demonstrate that his bail is excessive. *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex.Crim.App.1980).

### Conclusion

The trial court did not abuse its discretion by fixing Shane's bail at $475,000. We overrule Shane's point of error and affirm the trial court's order.

AFFIRMED.