

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0596-13 & PD-0624-13

### EX PARTE CHARLIE J. GILL, Appellant

### EX PARTE TOMMY JOHN GILL, Appellant

### ON APPELLANTS' PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### JASPER COUNTY

KEASLER, J., delivered the opinion of the Court, in which MEYERS, WOMACK, JOHNSON, HERVEY, COCHRAN, and ALCALA, JJ., joined. PRICE, J., joined Parts I and II, and filed a concurring opinion. KELLER, P.J., concurred.

### O P I N I O N

Arrested for murder, Tommy and Charlie Gill were held in custody for over ninety days without being formally charged with an offense. Appellants filed applications for writs of habeas corpus alleging that, under Texas Code of Criminal Procedure article 17.151, they were entitled to release on a personal bond or a reduction of bail. The trial judge denied Appellants' applications and the court of appeals affirmed those decisions.[1] Because the

---

[1] *Ex parte Tommy John Gill*, No. 09-13-00058-CR, 2013 WL 1932835 (Tex. App.—Beaumont May 8, 2013); *Ex parte Charlie J. Gill*, No. 09-13-00049-CR, 2013 WL 1790877 (Tex. App.—Beaumont April 24, 2013).

court of appeals erred in holding that the judge properly considered factors outside of article 17.151 in denying Appellants relief under that provision, we reverse and remand to the habeas court.

## I. Background

On September 1, 2012, Tommy and Charlie Gill were arrested for the murder of Ryan Dockens. Each Appellant's bail was initially set at $1,000,000 each. Between September 2012 and January 2013, Appellants sought three separate bail reductions. The bases for Appellants' requests, and the results of those requests, were identical. The judge took up each of Appellants' requests together. Each bail was reduced to $100,000, and then to $50,000. In January 2013, over ninety days after their arrest, Appellants filed applications for writs of habeas corpus, alleging that under Texas Code of Criminal Procedure article 17.151,[2] each was entitled to release either on a personal bond or by further reduction of bail to an amount that each could afford. At the time of the subsequent hearing, neither was charged by indictment, and the State conceded that it was not ready to proceed to trial.

At the January 3, 2013 hearing, Charlie Gill testified that the trial judge found he was indigent and was appointed counsel in the current case. The order so finding was admitted into evidence. Gill further testified that: (1) he has been in custody since being arrested on September 1, 2012; (2) he did not own any property; and (3) the extent of his financial wherewithal was the $100 in his jail commissary account. On cross-examination, Gill

---

[2] TEX. CODE CRIM. PROC. art. 17.151 (West 2012).

acknowledged he was previously convicted of theft of a vehicle, interstate transport of stolen vehicles, burglary, forgery, and aggravated assault.

Tommy Gill testified that he too was found indigent and was appointed counsel in the current case. The order so finding was admitted into evidence. He further testified that: (1) he had been in custody since his arrest; (2) he was unable to secure the $50,000 bond; (3) his financial condition had not changed since the $50,000 reduction; (4) he did not have the ability to borrow the necessary amount; (5) he did not have any relatives to loan him money; and (6) he had not been able to sell anything to raise money. Like his father, Tommy Gill acknowledged on cross examination that he had previous convictions—burglary of a building and possession and delivery of a controlled substance. Tommy Gill's fiancée testified that she was unsuccessful in securing a bond for Tommy Gill because she could not afford the $5,000 or $7,000 premiums she was quoted.

The judge denied Appellants' applications. The judge's findings of fact and conclusions of law state that each Appellant testified that he was indigent and had multiple prior felony convictions. Although the judge did not explicitly find that Appellants' prior criminal history presented victim- or community-safety concerns, it was implicitly the rationale for the denials. This interpretation is supported by the judge's conclusion that "even in the context of a [Code of Criminal Procedure] Article 17.151 hearing, the Court can properly and has in this case considered the factors for setting bail set forth in Article 17.15. Those listed factors are not exclusive and also include a defendant's prior criminal record and

any aggravating factors."[3]

Relying upon its own opinion in *Ex parte Matthews*,[4] the court of appeals affirmed the judge's denials and held that article 17.15 placed a mandatory duty on trial judges to consider the safety of the victim and the safety of the community when determining whether to release an accused under article 17.151.[5] The court of appeals also held that because Appellants had not met their burden to show that bail was excessive and the future safety of the victim and of the community would not be affected by their release, the judge did not abuse his discretion in determining that Appellants were not entitled to relief.[6]

The courts of appeals are currently split on what a trial judge may consider in evaluating article 17.151 requests for relief.[7] We granted Appellants' petitions for

---

[3] Findings of Fact and Conclusions of Law at 2, Nos. 32,621, 32,624, & 32,746 (1st District Court, Jasper County, Tex. January 28, 2013) (hereinafter "Findings of Fact and Conclusions of Law").

[4] *Ex parte Matthews*, 327 S.W.3d 884 (Tex. App.—Beaumont 2010, no pet.).

[5] *Ex parte Tommy John Gill*, 2013 WL 1932835 at *2; *Ex parte Charlie J. Gill*, 2013 WL 1790877 at *1.

[6] *Ex parte Tommy John Gill*, 2013 WL 1932835 at *2.

[7] *Compare Ex parte Pharris*, 402 S.W.3d 350, 353 (Tex. App.—Houston [14th Dist.] 2013, no. pet) (holding that trial judges are authorized to consider victim- and community-safety concerns), *Ex parte Matthews*, 327 S.W.3d at 888 (same), *Garner v. State*, No. 11-12-00211-CR, 2012 WL 37565089, *1 (Tex. App.—Eastland 2012, no pet.) (mem. op., not designated for publication) (same), *Ex parte Robinson*, No. 13-11-138-CR, 2012 WL 1255188, *3-4 (Tex. App.—Corpus Christi 2012, pet. ref'd) (not designated for publication), *with Ex parte Shaw*, No. 02-12-00116-CR, __ S.W.3d __, 2013 WL 257390, *2 (Tex. App.—Fort Worth 2013, pet. ref'd) (holding article 17.15 does not control article 17.151), *Ex parte Avila*, 201 S.W.3d 824, 826 (Tex. App.—Waco 2006, no. pet.)

discretionary review to resolve the issue and have consolidated them for our consideration.

## II. Analysis

Appellants argue that the mandatory language of article 17.151 precludes a trial judge from considering other factors, such as the safety of the victim or the community, in determining whether an accused is entitled to release under that section. The State disagrees, arguing that article 17.151 is governed by the dictates of article 17.15, which sets forth general rules for fixing amounts of bail. In the alternative, the State argues that article 17.151 is unconstitutional because it improperly infringes upon the trial court's judicial function. In reviewing the trial judge and court of appeals' decisions, we note that the decision of a trial judge at a habeas proceeding regarding the imposition or reduction of bail "will not be disturbed by this Court in the absence of an abuse of discretion."[8]

### A. Articles 17.15 and 17.151

Article 17.15, accurately entitled "Rules for Fixing Amount of Bail," articulates general "rules" or principles a judge must consider in setting bail. In relevant part, it provides:

> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> . . . .

---

(holding that article 17.151 requires a defendant be released).

[8] *Ex parte Spaulding*, 612 S.W.2d 509, 511 (Tex. Crim. App. 1981); *see also Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006).

(3) The nature of the offense and the circumstances under which it was committed are to be considered.

. . . .

(5) The future safety of a victim of the alleged offense and the community shall be considered.[9]

Article 17.151, titled "Release Because of Delay," reads in pertinent part:

Sec. 1. A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within:

(1) 90 days from the commencement of his detention if he is accused of a felony.[10]

In interpreting these statutes, we must analyze the plain language of the provision enacted by the Legislature. "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute."[11] We may look to extratextual sources only when the statute is ambiguous or the application of a statute's plain language would lead to absurd results that the Legislature could not possibly have intended.[12]

*Rowe v. State* was the seminal case in which this Court interpreted the meaning of

---

[9] TEX. CODE CRIM. PROC. art. 17.15 (West 2012).

[10] *Id.* art. 17.151, § 1.

[11] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[12] *Id.*

article 17.151.[13]  In *Rowe*, we held that where it was undisputed that the State was not ready for trial ninety days after an accused's arrest, a judge had only two options under article 17.151:  either release the accused upon personal bond or reduce the bail amount.[14]  "If the court chooses to reduce the amount of bail required, it must reduce bail required to an amount that the record reflects an accused can make in order to effectuate release."[15]

We hold that the court of appeals erred in concluding that the judge properly considered other factors not found in article 17.151.  We further find that the authority it relied upon in support of its conclusion is flawed.  In *Ex parte Matthews*, the Beaumont Court of Appeals held that the 1993 subsequent legislative amendment to article 17.15 essentially overruled *Rowe*.[16]  Prior to 1993, article 17.15 did not require a judge to consider the future safety of victims or the community; instead, it allowed the judge to do so at his discretion: "(5) The future safety of a victim of the alleged offense may be considered."[17]  On May 22, 1993—three days after *Rowe* was delivered—article 17.15 was amended to its current version: "(5) The future safety of a victim of the alleged offense and the community

---

[13]  *Rowe v. State*, 853 S.W.2d 581 (Tex. Crim. App. 1993).

[14]  *Id*.

[15]  *Id*. at 582 n.1.

[16]  *Ex parte Matthews*, 327 S.W.3d at 887.

[17]  Act of May 23, 1985, 69th Leg., R.S., ch. 588 § 2, 1985 Tex. Gen. Laws 2219 (amended 1993) (current version at TEX. CODE CRIM. PROC. art. 17.15 (West 2012)).

shall be considered."[18]  Relying on the new amendment, the court of appeals held that the

judge shall consider the provisions of article 17.15, including victim- and community-safety

concerns, even when release is sought under article 17.151.[19]  It reasoned that because the

rules of article 17.15 govern the exercise of a judge's bail-setting decision in "any case,"

these rules are implicated in article 17.151 cases, and therefore a judge must always comply

with the rules found in article 17.15.[20]

We hold the court of appeals misinterpreted the articles' plain language and their

application.  First, it is apparent from article 17.15's plain language that it is a general statute

governing the parameters of a judge's bail-setting determination.  In contrast, article 17.151

is a narrower statute applicable only to a limited subset of defendants—those in custody for

over ninety days and in whose cases the State is not ready for trial.  Concluding that the

general statute supersedes the more specific, the court of appeals overlooks the rule of

statutory construction that requires the two statutes to be read together and harmonized, if

possible, giving effect to both.[21]  The statutes' language reveals that the two are readily

compatible.  Article 17.151 contains distinctive language mandating that a defendant shall

---

[18]  *See* Act of May 22, 1993, 73rd Leg., R.S., ch. 396 § 1, 1993 Tex. Gen. Laws 1694, 1695.

[19]  *Ex parte Matthews*, 327 S.W.3d at 887–88.

[20]  *Id*.

[21]  *See Jones v. State*, 396 S.W.3d 558, 561-62 (Tex. Crim. App. 2013). *See also* TEX. GOV'T CODE § 311.026.

be released upon two conditions unrelated to article 17.15's general rules: (1) the State's unreadiness for trial on the criminal action for which an accused is being held; and (2) that the accused has been detained pending trial for ninety days, if accused of a felony. We hold that the Legislature intended article 17.151 to operate in conjunction with, not subservient to, article 17.15's rules as long as the judge's decision-making process results in the accused's release.

Second, finding that the judge must consider rules prescribed by article 17.15 that may prevent a defendant's release reads the phrase "must be released" right out of article 17.151, or alternatively grafts article 17.15's rules onto article 17.151, § 2's enumerated exceptions. The first sentence of article 17.151 unequivocally declares that a defendant detained pending trial "must be released" if the State is not ready for trial within the appropriate amount of time.[22] Conditioning release under article 17.151 on matters such as victim- or community-safety concerns deprives the statute of any meaning apart from article 17.15 and potentially frustrates article 17.151's clear intent.

Finally, despite the court of appeals' conclusion to the contrary, we are unconvinced that the Legislature's 1993 amendment of article 17.15 had any effect on our decision in *Rowe*. The Legislature's amendment to article 17.15 became effective on May 22, 1993, just three days after *Rowe* was decided.[23] Legislative enactment is normally a lengthy process,

---

[22] TEX. CODE CRIM. PROC. art. 17.151 § 1 (West 2012).

[23] *See Rowe*, 853 S.W.2d at 581 (opinion issued on May 19, 1993).

and it is unrealistic to suggest this amendment was a legislative response to *Rowe*. Moreover, if the Legislature intended to require judges to consider other factors when weighing a defendant's release under article 17.151, it would have amended that statute rather than article 17.15 to plainly reflect that intent. In 2005, it did just that. Expanding the exceptions found in article 17.151, § 2, the Legislature specifically added § 2(4) which stated that mandatory release did not apply to a defendant who is "being detained for a violation for the conditions of a previous release related to the safety of a victim of the alleged offense or to the safety of the community under this article."[24]

To the extent the court of appeals' decisions below express the belief that article 17.151 inadequately ensures victim and community safety, the Legislature provided judges with the means to achieve these goals. Article 17.40(a), titled "Conditions Related to Victim or Community Safety," reads in part, "To secure a defendant's attendance at trial, a magistrate may impose any reasonable condition of bond related to the safety of a victim of the alleged offense or to the safety of the community."[25] Nothing in the mandatory language of article 17.151 precludes a judge from imposing a broad range of reasonable (and even creative) conditions of release designed to ensure victim and community safety like no-contact orders, house arrest, electronic monitoring, or daily reporting. Article 17.40 acknowledges that a judge need not turn a blind eye to potential safety concerns.

[24] Act of May 10, 2005, 79th Leg., R.S., ch. 110, § 1, 2005 Tex. Gen. Laws 206 (to be codified as an amendment to TEX. CODE CRIM. PRO. art. 17.151, § 2).

[25] TEX. CODE CRIM. PROC. art. 17.40(a) (West 2012).

## B. Article 17.151's Application

Turning to the judge's denials of Appellants' writ applications, we find they cannot be sustained even under the deferential abuse-of-discretion standard. From a review of the record from Appellants' joint article 17.151 hearing, we find Appellants properly invoked article 17.151 because they established that they were in custody for over ninety days and the State was not ready to try them on the offense for which they were being held. In upholding the judge's denials, the court of appeals relied upon several facts or deficiencies in the record, none of which are relevant to article 17.151 evaluations. In *Tommy Gill*, the court of appeals relied upon the following to support the judge's denial: Tommy's fiancé did not testify what bond premium she could afford; there was no evidence where Tommy intended to live or how he would make a living; and there was no evidence that Tommy did not present a threat of committing new offenses "given his limited resources and prior history of committing felonies."[26] In *Charlie Gill*, the court of appeals relied upon the fact that the nature of the alleged offense was murder, the judge twice reduced the bail amount, Charlie had multiple prior felonies, and Charlie did not detail the sources or amount of his income.[27] None of these factors support the judge's denials or frustrate Appellants' release under article 17.151.

The court of appeals noted in both cases that the judge did not need to believe the

---

[26] *Ex parte Tommy John Gill*, 2013 WL 1932835, at *2.

[27] *Ex parte Charlie J. Gill*, 2013 WL 1790877, at *1.

Appellants' testimony. While true, there is nothing in the record to indicate that the judge's denials were driven by witness credibility. The only mention of credibility appears in the judge's conclusions of law, which are identical in Appellants' cases, concerning the breadth of article 17.151: "[17.151] does not mandate that a defendant, particularly one jailed for murder, be released on a personal recognizance bond based on his oftentimes self-serving testimony that he is indigent."[28] Despite the judge's reference to "self-serving testimony," the record does not suggest that the judge disbelieved that these particular appellants were unable to secure a $50,000 bond. We do not find this to be a credibility finding adverse to Appellants. Reviewing the testimony adduced at the hearing in light of article 17.151's mandatory terms, we hold that the trial judge abused his discretion in denying Appellants' request for a personal bond or setting bail in the amount that Appellants can make.

### III. Article 17.151's Constitutionality

The State argues in the alternative that article 17.151 is unconstitutional as violating the Texas Constitution's separation-of-powers provision[29] because it unduly infringes upon the judiciary. The separation of powers may be violated in one of two ways: (1) when one branch of government assumes or is delegated a power "more properly attached" to another branch or (2) when one branch unduly interferes with another branch so that the other branch

---

[28] Findings of Fact and Conclusions of Law, at 1.

[29] *See* TEX. CONST. art. II, § 1.

cannot effectively exercise its constitutionally assigned powers.[30] In these cases, the State claims that article 17.151 unduly interferes with the judicial power of the courts, specifically the authority to set bail. The State argues that article 17.151 unduly interferes with the judicial function of setting bail because "it mandates release, regardless of the particular facts of the case," thus "render[ing] the judiciary incapable of exercising its exclusive power to hear evidence, weigh evidence, exercise its discretion, and decide the issues presented."

In the past, we have held that certain realms of judicial administration are "so fundamental and so necessary to a court, so inherent in its very nature as a court," that they must be entirely free from legislative interference.[31] In *Jones v. State*, this Court concluded that article 17.151 does not unconstitutionally infringe upon the State's prosecutorial authority[32]—constitutionally, a part of the Judicial department.[33] We stated that "surely it is within the plenary power of the Legislature to provide that under certain circumstances an accused be released pending the outcome of trial."[34]

---

[30] *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990).

[31] *Id.* at 240–41 (quoting A. Leo Levin & Anthony G. Amsterdam, *Legislative Control Over Judicial Rule-Making: A Problem in Constitutional Revision*, 107 U. PA. L. REV. 1, 32 (1958)).

[32] *Jones v. State*, 803 S.W.2d 712, 716 (Tex. Crim. App. 1991).

[33] *Meshell v. State*, 739 S.W.2d 246, 253 (Tex. Crim. App. 1987) ("By establishing the office of the county attorney under Article V, the authors of the Texas Constitution placed [county, district, and criminal district attorneys] within the Judicial department.").

[34] *Jones*, 803 S.W.3d at 717.

We hold that article 17.151 does not unduly interfere with the Judiciary's effective exercise of its constitutionally assigned power and therefore does not violate the separation of powers provision of the Texas Constitution. Article 17.151 does not unduly interfere with the judge's exclusive role of hearing and considering evidence. The judge in an article 17.151 hearing still must decide from the evidence whether the State is ready for trial, determine the length a defendant has been in custody, as well as consider the article 17.15 rules in determining whether to issue a personal bond or to set an amount of bail to effectuate the accused's release. It is also within the judge's discretion to consider whether to impose additional conditions of bond under article 17.40, and if so, the nature of those conditions.

## IV. Conclusion

We are troubled that a judge may order the indefinite detention of an uncharged accused on an offense the State is not ready to bring to trial on the basis of his criminal history, the nature of the alleged offense, or that he might present a danger to the victim or the community. It apparently troubled the Legislature as well. Article 17.151 was the remedy. And its assurance of an accused's release when the State was not ready to proceed with trial after a fixed period of time had expired following the accused's arrest is not an unconstitutional violation of the separation of powers. In failing to comply with article 17.151 and order Appellants' release on a personal bond or reduce Appellants' bail to an amount they can make, the judge abused his discretion.

We reverse the court of appeals' judgments and remand these causes to the habeas

court for immediate further proceedings consistent with this opinion.  No motions for rehearing will be entertained.


DATE DELIVERED: November 20, 2013

PUBLISH