

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00417-CR

_____

EX PARTE GABRIEL DELGADO A/K/A GABRIEL DELGATO

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1540765D

Before Gabriel, Kerr, and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Gabriel Delgado[1] appeals the trial court's order denying his pretrial application for writ of habeas corpus seeking a bail reduction. After submitting the matter without briefing, we affirm. *See* Tex. R. App. P. 31.1.

## Background

A grand jury indicted appellant for murder. The indictment contained a habitual offender paragraph alleging that appellant has a prior conviction for murder and a prior conviction for assault on a public servant in retaliation for performing an official duty. The trial court issued an arrest warrant, appellant was taken into custody, and the trial court appointed appellant an attorney. The trial court set appellant's bond at $500,000.

Appellant then retained an attorney, who filed an Application for Writ of Habeas Corpus Seeking Bail Reduction. After an evidentiary hearing, the trial court found that the bond amount was not excessive "due to the nature of the offense and [appellant's] criminal history" and denied relief. Appellant then filed this expedited appeal. *See* Tex. R. App. P. 31.2.

## Applicable Law and Standard of Review

The primary purpose of an appearance bond is to secure the accused's presence at trial on the offense charged. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim.

---

[1]Appellant's last name is alternately spelled Delgado and Delgato in the record. He signed his certification of the right to appeal with "Delgado."

App. 1977); *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pets. ref'd). Thus, a trial court should set bail high enough to reasonably assure that the defendant will appear at trial, but not so high that it operates as an instrument of oppression. Tex. Code Crim. Proc. Ann. art. 17.15 (West 2015); *Hunt*, 138 S.W.3d at 505. Federal and state law both prohibit the imposition of excessive bail. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. In a habeas proceeding, the accused bears the burden of proof to show that the bail is excessive. *Id.* at 505–06.

In determining a bond amount, the trial court should consider factors such as the accused's ability to make bail, work record, family ties, length of residency, prior criminal record, and conformity with the conditions of any previous bond. Tex. Code Crim. Proc. Ann. art. 17.15; *Hunt*, 138 S.W.3d at 506. The trial court should also consider the existence of outstanding bonds; any aggravating circumstances alleged to have been involved in the charged offense; the nature of the crime, circumstances under which it was committed, and the accused's potential sentence; and the future safety of a victim of the alleged offense and the community. Tex. Code Crim. Proc. Ann. art. 17.15; *Hunt*, 138 S.W.3d at 506.

We review a trial court's ruling on a pretrial writ of habeas corpus for an abuse of discretion. *Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013).

**Facts Adduced At Evidentiary Hearing**

Appellant's long-time friend Tammie Gonzales testified that appellant has two children, is a great father, and "has Jesus Christ in his heart." He had worked in

3

Tarrant County at a job involving machinery for three or four years. Appellant made around $2,000 to $2,500 per month and gave his children's mother from $100 to $200 per week.

Gonzales testified that appellant would live with her in Arlington, Texas, if released on bond. Gonzales owns a construction company and would be able to provide appellant food and necessities if he were placed on house arrest. She also said she would take appellant wherever he needed to be.

According to Gonzales, the most she and appellant's family could raise for bond is $10,000 for a $100,000 surety bond.

Appellant's sister, a resident of Farmington, New Mexico, testified that before appellant was arrested, he planned on turning himself in; he went to New Mexico to see her and the rest of his family "before he had to take care of some business." But she did not know what appellant meant by that. Appellant did not tell her that he was a murder suspect. She also did not know how appellant got to New Mexico; he told her a friend brought him there, but appellant was alone when he arrived.

Appellant's mother and three siblings live in New Mexico, but his father lives in Fort Worth. According to appellant's sister, appellant has lived in Texas since he was 13 or 14 years old. He is very close to his children.

Appellant's sister confirmed that the most the family could afford to raise—with all of them pitching in—is $10,000 for a $100,000 surety bond.

Fort Worth police detective Kyle Sullivan testified that he prepared the arrest warrant for appellant, which the trial court admitted into evidence. Fort Worth police could not locate appellant in Tarrant County. Ten days after a judge issued the arrest warrant, U.S. Marshals arrested appellant on a Native American reservation in Nageezi, New Mexico.

In the affidavit in support of the arrest warrant, Sullivan averred that Fort Worth police responded to a shooting call around 8:07 p.m. on April 1, 2018. When they arrived, the complainant was lying in the hallway with a gunshot wound to his chest; he did not survive. During an interview with police, the complainant's wife, Michaela Vera, identified appellant, her ex-boyfriend, as the person who had shot and killed her husband. Vera told police that appellant sent the complainant text messages the night before and the day of the shooting saying he wanted to fight. When the complainant tried to leave their home the night of the shooting to go to the store, appellant pulled up in his father's car, got out, and approached the house. The complainant got out of his car and told appellant to leave. Appellant fired two to three shots in the complainant's direction. The complainant came inside the house and collapsed on the floor.

**Trial Court's Findings of Fact and Conclusions of Law**

At appellant's request, the trial court signed findings of fact and conclusions of law:

5

Findings of Fact:
> 1. The Court took judicial notice that the indictment in this case alleged the Defendant had committed the offense of murder. ·
> 2. The Court additionally took judicial notice that the indictment contained allegations of the Defendant having two prior felony convictions.
> 3. One of the prior convictions alleged in the indictment against the Defendant is a conviction for murder.
> 4. The Court additionally took judicial notice that the recommended bail for the Defendant in this cause was $500,000.
> 5. State's Exhibit 1 was the warrant of arrest for the Defendant in this cause. The supporting affidavit of the warrant indicates that the Defendant murdered the current boyfriend of his ex-wife[2] at her house.
> 6. The alleged murder of the current boyfriend by the Defendant occurred in the presence of one of the Defendant's minor children.
> 7. The Defendant fled to the State of New Mexico after the commission of this alleged offense.
> 8. Tammie Gonzalez testified that, if the Defendant were to be released on bail, she would provide a place for the [D]efendant to live and would assist with compliance with any conditions of bond that the court would impose.
> 9. Griselda Delgato testified that the Defendant's family lived in New Mexico.
> 10. The Court denied the writ and ordered that the bond amount previously set remain at the same amount.

Conclusions of Law:
> 1. Based upon the evidence, the court concludes that the bail amount is sufficiently high to give reasonable assurance to ensure the Defendant's presence in court.
> 2. The Defendant does not have adequate ties to the community.
> 3. The Defendant's flight to New Mexico indicates that the Defendant is a flight risk.

---

[2]The description of the parties' relationships in the findings of fact conflicts with the description in the arrest warrant; the arrest warrant describes the complainant as Vera's husband and appellant as her ex-boyfriend. In our discussion, we will use the descriptions from the arrest warrant.

4. Based upon the alleged facts of the offense and the prior criminal history of the Defendant[,] the safety of the community mandates that the bail amount remain the same.

5. The Court denies the Defendant's writ of habeas corpus seeking bail reduction.

## Denial of Bond Reduction Not Abuse of Discretion

Appellant is a thirty-year resident of Tarrant County and at the time of his arrest had worked at the same job for around four years. Although his father lives in Tarrant County, his friend testified that appellant could live with her if he were released on bond. His family could raise only 1/5 of the amount of the currently set bond. These factors weigh in favor of a bond reduction.

But appellant is accused of murder based on his ex-girlfriend's eyewitness testimony, and he has a prior criminal record, which includes two felonies, one of them a murder conviction. *Cf.* Tex. Const. art. I, § 11a (authorizing denial of bail to person accused of a noncapital felony who has two prior felony convictions if State provides substantial evidence of guilt of charged offense). He allegedly committed the murder here in his ex-girlfriend's presence in the front yard of her residence. The State informed the trial court during argument that appellant's children[3] were at home and that the State will proffer one of them as a witness.[4] Appellant has strong family ties in New Mexico; his brother lives there on the Native American reservation where

---

[3]According to the arrest warrant, Vera told the police that appellant was the father of her two youngest children.

[4]Appellant did not object to this assertion.

U.S. Marshals found and arrested appellant. Appellant is facing a maximum sentence of life in prison. Finally, appellant has an additional prior conviction for retaliation against a public servant, which—along with his prior murder conviction and the circumstances of this alleged murder—justifies a concern for the safety of the community and the witnesses in this case. These factors weigh considerably in favor of a higher bond amount.

Therefore, we hold that the trial court did not abuse its discretion by denying appellant's Application for Writ of Habeas Corpus Seeking Bail Reduction. *See, e.g.*, *Ex parte Leos-Trejo*, No. 09-18-00113-CR, 2018 WL 3556589, at *4–5 (Tex. App.— Beaumont July 25, 2018, pet. ref'd) (mem. op., not designated for publication); *Ex parte Payten*, No. 02-13-00447-CR, 2013 WL 5968449, at *3–4 (Tex. App.—Fort Worth Nov. 7, 2013, no pet.) (mem. op., not designated for publication); *Ex parte Wright*, No. 14-09-00805-CR, 2010 WL 1609235, at *3–5 (Tex. App.—Houston [14 Dist.] Apr. 22, 2010, no pet.) (mem. op., not designated for publication); *Ex parte Simpson*, 77 S.W.3d 894, 895, 897 (Tex. App.—Tyler 2002, no pet.). We affirm the trial court's order.

/s/ Wade Birdwell
Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 8, 2018