# Court of Appeals
## Tenth Appellate District of Texas

---

10-25-00437-CR

---

Ex parte Janette Marie Goering

---

On appeal from the
413th District Court of Johnson County, Texas
Judge William C. Bosworth Jr., presiding
Trial Court Cause No. DC-I202500510

---

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

Janette Marie Goering was arrested for the offense of aiding in the commission of terrorism. *See* TEX. PENAL CODE ANN. § 76.03. Bail was set at $5,000,000, and Goering filed a pretrial application for writ of habeas corpus seeking a bail reduction. After a hearing, the trial court denied the requested relief. In her sole issue on appeal, Goering claims that the trial court abused its discretion in refusing to reduce the $5,000,000 bail amount. We reverse and remand.

RELEVANT LAW

Prior to conviction, every citizen accused of a crime has a "strong interest in liberty." *United States v. Salerno*, 481 U.S. 739, 750 (1987). To protect that interest, the Eighth Amendment to the United States Constitution provides

that "[e]xcessive bail shall not be required[.]" U.S. CONST. amend. VIII. Additionally, the Texas Constitution guarantees that "[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offences, when the proof is evident ...." TEX. CONST. art. I, § 11. This constitutional right to reasonable bail has also been codified in the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 1.07, 17.15(a)(2).

In balancing the liberty interest of an accused person and the safety interests of society, the Texas Legislature adopted rules and guidelines that can be used to obtain pretrial release through the posting of an adequate bail bond. *See id.* arts. 17.01-.53. With regard to excessive bail, an accused has the right to assert his or her constitutional right to reasonable bail through the use of a pretrial application for writ of habeas corpus. *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001) (citing *Ex parte Keller*, 595 S.W.2d 531, 532-33 (Tex. Crim. App. [Panel Op.] 1980)). The burden of proof is on the defendant to show that the amount of bail set was excessive. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980).

While a magistrate has broad discretion in determining the dollar amount and any conditions of bail, exercise of that discretion is governed by factors set forth in article 17.15 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(a). These factors are:

1. Bail and any conditions of bail shall be sufficient to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be used to make bail an instrument of oppression.

3. The nature of the offense and the circumstances under which the offense was committed are to be considered, including whether the offense: (A) is an offense involving violence as defined by Article 17.03; or (B) involves violence directed against a peace officer.

4. The ability to make bail shall be considered, and proof may be taken on this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant, including information obtained through the statewide telecommunications system maintained by the Department of Public Safety and through the public safety report system developed under Article 17.021[1], shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7. The citizenship status of the defendant shall be considered.

*Id.*

---

[1] Pursuant to an order of this Court, the trial court filed written findings of fact and conclusions of law addressing whether a public safety report ("PSR") was reviewed and what specific information the trial court relied upon in making its ruling. *See* TEX. CODE CRIM. PROC. ANN. arts. 17.021, 17.022. The trial court stated that it did not review a PSR. We note that even if the trial court's failure to consider a PSR was erroneous, Goering did not preserve this issue for our consideration and does not contend that she was harmed by the failure to consider a PSR. *See Ex parte Segovia*, 690 S.W.3d 771, 776 (Tex. App.—Amarillo 2024, no pet.).

STANDARD OF REVIEW

In a habeas proceeding regarding a claim of excessive bail, we review a trial court's decision regarding the amount of bail for an abuse of discretion. *Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013). Under this standard, the appellate court may not substitute its own judgment for that of the trial court; however, reviewing a trial court's judgment for an abuse of discretion "requires more of the appellate court than simply deciding that the trial court did not rule arbitrarily and capriciously." *See Ex parte Tata*, 358 S.W.3d 392, 397 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) (citing *Cooley v. State*, 232 S.W.3d 228, 234 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). In reviewing the trial court's bail decision, the appellate court must measure the trial court's ruling against the relevant criteria. *Id.* at 397-98.[2]

When, as here, the trial court provided written findings of fact and conclusions of law, we afford almost total deference to the trial court's factual findings when they are supported by the record. *See Ex parte Estrada*, 573

---

[2] *See also*, *Ex parte Benefield*, 403 S.W.3d 240, 246 (Tex. Crim. App. 2013) (Cochran, J., concurring), explaining:

> Setting an appropriate bail … is a weighty decision with important considerations and constitutional concerns on all sides. It is, however, a decision that all too often results in the pretrial detention of the accused citizen, despite compelling evidence suggesting pretrial release may be less costly to the community, fairer to the defendant, and, when appropriate conditions are attached, capable of ensuring the safety of the community. Appellate courts must provide meaningful review of the bail and pretrial-release decision to ensure that trial judges strike a constitutional balance between community safety and ensuring a defendant's appearance on one side, and the social and financial costs (both to the State and defendant) of oppressive pre-trial detention on the other.

S.W.3d 884, 891 (Tex. App.—Houston [1st Dist.] 2019, no pet.). The trial court, acting as sole factfinder, may believe or disbelieve all or any part of a witness's testimony, even when that testimony is uncontroverted. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When the trial court makes explicit credibility findings, we must defer to those determinations. *See State v. Sheppard*, 271 S.W.3d 281, 286 (Tex. Crim. App. 2008).

ANALYSIS

Goering contends that all of the article 17.15 factors weigh in favor of reducing her bail. While we do not agree that every factor weighs in Goering's favor, we agree that the trial court abused its discretion in refusing to reduce her $5,000,000 bail.

Nature and Circumstances of the Offense (Third Factor)

The nature of the crime and the potential sentence are "primary factors" to consider in determining whether the trial court abused its discretion. *See Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref'd). Here, the trial court concluded that the "nature and circumstances of the offense justify a five-million-dollar bail amount."

In its findings of fact, the trial court noted that the circumstances of the offense involved "significant planning, reconnaissance, and coordination among multiple participants[,]" resulting in "violent conduct directed toward

government staff and facilities." Specifically, this offense arises from a coordinated attack on a United States Immigration and Customs Enforcement detention facility on July 4, 2025, "during which multiple armed individuals infiltrated the perimeter of the facility, fired fireworks at the facility, and vandalized structures and surveillance equipment." One of the responding law enforcement officers was shot during the attack, and has since fully recovered from his injuries.

The trial court also found that Goering was affiliated with organizations associated with Antifa ideology, and that she assisted with events involving tactical or preparedness training, such as teaching individuals how to construct Faraday bags.[3] The court further found that Goering expressed solidarity with Antifa-related activities opposing United States Immigration and Customs Enforcement on her social media accounts.

Goering's alleged level of involvement in the offense is relevant here. *See Ex parte Davis*, 147 S.W.3d 546, 550 (Tex. App.—Waco 2004, no pet.). The trial court specifically found that Goering "is alleged to have provided material support to the offense by supplying a Faraday bag used by [the alleged shooter] to evade law enforcement detection following the attack." Conflicting evidence was presented as to when Goering may have provided this bag to the alleged

---

[3] A Faraday bag was described as "something … to put a cell phone inside, or an electronic device, to mitigate the digital signature to, essentially, hide yourself."

shooter – either at a "gear check" the night before the attack, or at an allegedly unrelated sewing workshop Goering hosted at her home several months prior to the attack. The trial court's findings do not directly address when Goering provided the Faraday bag; however, we note that the trial court did not specifically find that Goering was present at the "gear check" or that she participated in the preparation activities there. Goering is not accused of providing weapons to participants, personally participating in the attack on July 4, 2025, being present at the facility on the night of the attack, personally committing any act of violence, or transporting or actively concealing any of the participants after the attack.[4] She is accused of providing a bag at some point prior to the attack that eventually helped conceal the alleged shooter's cell phone signal.

The offense of aiding in the commission of terrorism under section 76.03 does not establish its own independent penalty range; rather, it adopts the punishment range of the underlying terrorism offense in section 76.02. *See* TEX. PENAL CODE ANN. §§ 76.02(a), 76.03(b). Section 76.02 enhances the applicable punishment range to

---

[4] The record reflects that certain individuals apparently conspired to relocate the alleged shooter after the attack and help him evade law enforcement detection. The investigator testified that surveillance video from the day after the attack captures Goering meeting with some of these individuals at a gas station; however, he agreed with defense counsel that he had no evidence that Goering was part of the plan to relocate and/or conceal the shooter and that she was not charged for that conduct.

> one category higher than the most serious offense listed in Subsection (a) that was committed or conspired to be committed, except that … if the most serious offense is a felony of the first degree, the offense under this section is a felony of the first degree with a minimum term of confinement of fifteen years.

*Id.* at § 76.02(b). According to the arrest warrant affidavit, which was admitted at the hearing, Goering was arrested for a first-degree felony offense. The affidavit does not specify which section 76.02 offense underlies Goering's charge, though the facts in the record indicate that the first-degree felony offense of aggravated assault against a public servant under section 22.02(b)(2)(B) could apply. *See id.* at §§ 22.02(b)(2)(B), 76.02(a), (b). If this is correct, Goering's punishment range would be fifteen to ninety-nine years or life in prison. *Id.*

### Inability to Make Bail (Fourth Factor)

The only evidence regarding Goering's inability to make bail came from her husband's testimony. The trial court concluded that Goering "can make a five-million-dollar bail," citing to a portion of Goering's husband's testimony as support. Elsewhere, however, the trial court expressly found Goering's husband's testimony not to be credible and stated that it did not rely on his testimony in making its decision. Whether or not the trial court considered Goering's husband's testimony in making its determination, we find nothing in the record to factually support the conclusion that Goering has the financial

ability to make a $5,000,000 bail.[5]  However, the trial court also concluded that Goering "failed to present sufficient credible evidence of her financial resources, assets, liabilities, or efforts to obtain a bond sufficient to establish an *inability* to make bail." (emphasis added).  Affording deference to the trial court's credibility finding, this conclusion is supported by the record and weighs against reducing Goering's bail.

Community Safety (Fifth Factor)

In considering the community's safety, the trial court emphasized the coordinated, violent nature of the attack against government facilities and staff, and the fact that a peace officer was shot during the event.  The court also noted that the ongoing investigation involves multiple co-defendants and determined that before Goering's arrest, she traveled to Johnson County to support individuals who had been arrested for their participation in the attack.

Again, we find it important to note Goering's role in the offense here. She is not accused of participating in the coordination or execution of the violent attack.  While the trial court appropriately considered a generalized concern for law enforcement and community safety in avoiding similar attacks on government facilities and staff, there was no evidence presented that

---

[5] Goering's husband testified that their current assets include $25,000 in a personal checking account, a credit card with either a $30,000 limit or a $35,000 limit, and a house that they purchased approximately five years earlier for $300,000 with a 30-year mortgage on it.  He further testified that Goering lost her job when she was arrested and that he owes her attorney another $25,000.

Goering personally presents an identifiable threat to law enforcement or the community. *See Chavez v. State*, 671 S.W.3d 775, 786-87 (Tex. App.—Fort Worth 2023, no pet.).

<u>Criminal Record and Family Violence (Sixth Factor)</u>

Goering has no criminal history, and the record does not indicate the existence of any other pending charges. Goering provided the court with fourteen character letters as well as live witness testimony regarding her character and non-violent nature.

<u>Citizenship (Seventh Factor)</u>

Goering's citizenship was not directly addressed at the hearing. There was evidence that her father was in the military and that she spent most of her childhood growing up in Nevada. Neither of the parties contend that Goering is not a U.S. citizen.

Under the heading "Risk of Flight," the trial court found that Goering "has ties outside Texas." The facts underlying this determination are that Goering grew up in Nevada, she has "friendships in international locations," and she contributed some money to her mother four years ago for her mother to purchase a home in the Philippines. The record does not indicate whether that home was ever purchased or, if so, whether her mother still owns it. Goering's husband testified that she has close friends in Japan and Canada,

but no details of these friendships – including whether Goering has ever physically traveled to visit these friends – were developed.

As for her community ties, the record indicates that Goering has lived in Texas since 2018. She is married and owns a home with her husband in Texas. She also holds a degree in software engineering and was steadily employed prior to her incarceration. Goering is also an active member in multiple clubs and organizations in her community.

<u>Assure Appearance Without Oppression (First and Second Factors)</u>

The trial court found that Goering "failed to prove by a preponderance of the evidence that the current bail is excessive." While bail should be sufficiently high to give reasonable assurance of a defendant's appearance, "[w]hen bail is set so high that a person cannot realistically pay it … the trial court essentially 'displaces the presumption of innocence and replaces it with a guaranteed trial appearance.'" *Ex parte Robles*, 612 S.W.3d 142, 147 (Tex. App.— Houston [14th Dist.] 2020, no pet.) (citing *Ex parte Dupuy*, 498 S.W.3d 220, 233 (Tex. App.—Houston [14th Dist.] 2016, no pet.)); *see also Ex parte Curran*, No. 14-23-00252-CR, 2023 WL 8431231, at *5 (Tex. App.—Houston [14th Dist.] Dec. 5, 2023, no pet.) (mem. op., not designated for publication) (finding $25 million bail in capital murder case "wholly unprecedented and

without specific supporting evidence" and a "*de facto* setting of no bond.").[6] Moreover, though the trial court's rejection of the sole financial witness's testimony defeats Goering's showing of inability to pay, **"**[j]ust as a defendant's inability to afford bail does not, in itself, demonstrate that bail is excessive, a defendant's ability to afford bail in the amount set does not in itself justify bail in that amount." *Beard*, 92 S.W.3d at 573; *see also Badall v. State*, No. 09-04-211-CR, 2004 WL 1699911, at *4 (Tex. App.—Beaumont July 28, 2004, pet. ref'd) (mem. op., not designated for publication) (reducing $1,000,000 bail on murder charge to $400,000, finding bail "extraordinarily high" despite defendant's failure to establish inability to make bail). We must question whether $5,000,000 is a "reasonably" high amount of bail considering the specific circumstances in this case. *See Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd) (explaining that in determining whether a trial court's order is within the zone of reasonable disagreement, "we cannot disregard the extraordinary amount of bail ordered.").

The State cites to *Ex parte Bautista-Renteria*, 717 S.W.3d 445 (Tex. App.—Tyler 2025, no pet.), in support of the trial court's decision to uphold the $5,000,000 bail amount. In that case, the appellate court upheld a cumulative

---

[6] "Although unpublished cases have no precedential value, we may take guidance from them as an aid in developing reasoning that may be employed." *Holland v. State*, 702 S.W.3d 836, 840 (Tex. App.—Waco 2024, pet. ref'd) (quoting *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd)).

$4,700,000 bail on five non-capital felony charges including murder, two counts of aggravated assault, deadly conduct, and evidence tampering. *Id.* at 453. However, in that case, the defendant was accused of personally firing an AK-47 style rifle over a dozen times at a group of young men who mistakenly turned onto a road next to his shop, killing one of them, and then soliciting his family (including his children) to help him conceal evidence. *Id.* at 449. The appellate court found no abuse of discretion considering the random, violent nature of the defendant's actions, the difficulty of crafting bond conditions sufficient to protect the public given the facts of the case, evidence that the defendant might be involved in ongoing criminal activity, and the defendant's status as a Mexican national with parents residing in Mexico. *Id.* at 449-52. Those aggravating factors are not present in Goering's case.

Five million dollars is an extraordinarily high amount of bail; even so, such an amount might fall within the zone of reasonable disagreement under appropriate circumstances. Those circumstances are not present here. Goering was arrested for a single, non-capital first-degree felony offense. She is a Texas resident with no criminal history and no history of failing to appear in court. She presents no identifiable threat to the victim or community, and has no history of violence. Goering allegedly provided material support to the offense in a nonviolent way by providing a Faraday bag that the alleged shooter

utilized in evading law enforcement; however, she is not accused of being part of the group of co-defendants who actively helped conceal that individual after the attack.

Having measured the trial court's ruling against the bail criteria, we find that bail in this case is "set in an amount greater than necessary to satisfy the government's legitimate interests" and that the trial court abused its discretion in denying Goering's writ of habeas corpus. *Beard*, 92 S.W.3d at 573. We sustain Goering's sole issue and reverse the trial court's order denying the writ of habeas corpus. We remand this case to the trial court to set a reasonable bail in accordance with this opinion, determine what reasonable terms and conditions of bail, if any, should be imposed, and to allow the State and Goering an opportunity to present additional relevant evidence or argument to aid in its decision. *See Ex parte Brooks*, 376 S.W.3d 222, 224 (Tex. App.—Fort Worth 2012, pet. ref'd).

## Conclusion

Having sustained Goering's sole issue on appeal, we reverse the trial court's order denying her writ of habeas corpus and remand this case to the trial court for further proceedings consistent with this opinion.

_____

STEVE SMITH
Justice

OPINION DELIVERED and FILED:  June 4, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Reversed and remanded
Do Not Publish
OT06

