Opinion issued March 19, 2026



In The

# Court of Appeals

For The

# First District of Texas

_____

NO. 01-25-00681-CR
NO. 01-25-00682-CR
NO. 01-25-00683-CR

_____

## EX PARTE GIAMBI BOYD

---

## On Appeal from the 412th District Court
## Brazoria County, Texas
## Trial Court Case Nos. 100532-CR, 100541-CR, and 100542-CR

---

## MEMORANDUM OPINION

This is an appeal from the denial of a pretrial writ of habeas corpus.  Giambi

Boyd was indicted for aggravated assault with a deadly weapon and two offenses of

murder.[1]  Bail was set at $1,200,000.  Boyd filed a pretrial application for a writ of habeas corpus, complaining of unlawful detention and seeking to reduce his bail.  He argued that he was statutorily entitled to relief because the State was not ready for trial within 90 days after his detention began, as required by article 17.151 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 17.151.  The trial court denied habeas relief.

Boyd now appeals.[2]  Because the State first showed readiness for trial 560 days after Boyd's pretrial confinement began—well after the 90-day time period in article 17.151—the statute mandates a reduction in bail.  We therefore must reverse and remand.

## Background

Boyd was arrested on February 9, 2024 and has been detained since that date.  On March 7, 2024, a Brazoria County Grand Jury returned a true bill of indictment, accusing Boyd of three offenses arising from the same incident.  Bail was set at $200,000 for the aggravated assault and at $500,000 for each murder.  Boyd unsuccessfully moved to reduce his bail.

---

[1]  Trial court case number 100532-CR is appellate cause number 01-25-00681-CR.
Trial court case number 100541-CR is appellate cause number 01-25-00682-CR.
Trial court case number 100542-CR is appellate cause number 01-25-00683-CR.

[2]  *See* TEX. R. APP. P. 31.

Subsequently, Boyd filed a pretrial application for a writ of habeas corpus in each case. He asked the trial court to "address the legality of [his] detention" and to set reasonable bail under the general factors in article 17.15 of the Texas Code of Criminal Procedure—namely, the nature of the offense, his circumstances, the safety of the community, and the amount necessary to ensure his presence at trial.[3]

At a hearing on August 22, 2025—some 560 days after Boyd's arrest—he argued that he was statutorily entitled, under article 17.151, to pretrial release on a personal bond or to have his bail reduced to an amount he could afford because the State was not ready for trial within 90 days after his detention began.[4] His mother testified that the family could afford a bond in the amount of $5,000.

The State argued at the hearing that it had not formally stated on the record that it was not ready for trial during the 90-day statutory period. According to the State, the FBI had submitted the firearms for testing "somewhere in Virginia," and "the evidence was not ready for trial." As discussed below, the State declared that if the defense were willing to go to trial without the firearms testing, then "the State could be ready as well without having the evidence tested."

The trial court denied habeas relief in each case.

---

[3]     *See* TEX. CODE CRIM. PROC. art. 17.15.

[4]     *See id.* art. 17.151.

**Delay**

Boyd now argues that the trial court erred in denying habeas relief because the State did not meet its statutory burden to show that it was ready for trial within 90 days after the start of his detention. *See* TEX. CODE CRIM. PROC. art. 17.151.

**A.      Standard of Review and Principles of Law**

We review a trial court's decision to deny habeas relief under article 17.151 for an abuse of discretion. *See Ex Parte Gill*, 413 S.W.3d 425, 431 (Tex. Crim. App. 2013). Under this standard, a trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules and principles, or "when no reasonable view of the record could support its ruling." *State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021). In making this determination, we view the evidence in the light most favorable to the trial court's ruling. *Id.*

Article 17.151 provides in relevant part:

A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within . . . 90 days from the commencement of his detention if he is accused of a felony . . . .

TEX. CODE CRIM. PROC. art. 17.151, § 1(1).

"Article 17.151 is mandatory; if the State is not ready for trial within 90 days of the beginning of the defendant's detention, the defendant accused of a felony must be released on personal bond or by reducing the required bail amount." *Ex parte*

*Lanclos*, 624 S.W.3d 923, 927 (Tex. Crim. App. 2021). And if the trial court "chooses to reduce the amount of bail required, it must reduce it to an amount that the record reflects the accused can make." *Id.*

Under the statute, the State has the initial burden to make a prima facie showing that it was ready for trial within 90 days after the start of a defendant's detention. *See Jones v. State*, 803 S.W.2d 712, 717 (Tex. Crim. App. 1991). The State's "readiness" refers to its preparedness for trial, not to whether trial could have actually begun at that time. *Ex parte Lopez*, No. 01-17-00586-CR, 2018 WL 3384636, at *4 (Tex. App.—Houston [1st Dist.] July 12, 2018, no pet.) (mem. op., not designated for publication). And there is not a "bright line" as to the type or quantity of evidence that the State must have available to be considered prepared. *Ex parte Brosky*, 863 S.W.2d 775, 779 (Tex. App.—Fort Worth 1993, no writ).

The State may satisfy its burden "either by announcing within the allotted time that it is ready, or by announcing retrospectively that it had been ready within the allotted time." *Jones*, 803 S.W.2d at 717. "It is not enough that the State appear in open court after the running of the applicable period and declare itself at that time ready for trial." *Id.*

If the State meets its initial burden, the burden shifts to the defendant to rebut the State's showing. *Id.* at 718. Evidence that rebuts a prima facie showing of readiness includes a showing that the State lacked a key witness or evidence on the

last day of the 90-day period—such that the State was not ready within that time limit. *Id.*

**B.    Preservation**

The State complains that Boyd's written habeas application does not contain a complaint under article 17.151 that the State was not ready for trial within 90 days after his detention began.  Rather, Boyd solely asked the trial court to set reasonable bail "in accordance with Article 17.15 . . . considering the nature of the offense, the circumstances of the accused, the safety of the community, and ensuring the presence of the accused at trial."

Articles 17.15 and 17.151 are distinct grounds for bail reduction.  Article 17.15, "Rules for Setting Amount of Bail," "articulates general 'rules' or principles a judge must consider in setting bail." *Ex Parte Gill*, 413 S.W.3d at 428; *see* TEX. CODE CRIM. PROC. art. 17.15.  On the other hand, article 17.151, "Release Because of Delay," is a "narrower statute applicable only to a limited subset of defendants— those in custody for over ninety days and in whose cases the State is not ready for trial." *Ex Parte Gill*, 413 S.W.3d at 429–30; *see* TEX. CODE CRIM. PROC. art. 17.151.

In setting bail under article 17.151, a trial court "may not consider any factors outside of those in article 17.151, such as the factors enumerated in article 17.15."

6

*Hernandez v. State*, 465 S.W.3d 324, 326 (Tex. App.—Austin 2015, pet. ref'd).[5]

"Conditioning release under article 17.151 on matters such as victim- or community-safety concerns deprives the statute of any meaning apart from article 17.15 and potentially frustrates article 17.151's clear intent." *Ex parte Gill*, 413 S.W.3d at 430 ("We hold that the Legislature intended article 17.151 to operate in conjunction with, not subservient to, article 17.15's rules as long as the judge's decision-making process results in the accused's release.").

Here, Boyd argued in his written application that his detention was "unlawful," and he asked the trial court to "address the legality of [his] detention." At the habeas hearing, the parties' arguments specifically focused on Boyd's assertion that he was entitled under article 17.151 to release on personal bond or a reduction in bail because the State was not ready for trial within 90 days after his detention began. Immediately after this discussion, the trial court orally denied Boyd's application. Later that day, it issued a written order denying relief, stating that it had considered "the pleadings, evidence, *and arguments of counsel*." (Emphasis added.)

---

[5] Factors for consideration in setting bail under article 17.15 include: the nature of the offense, the ability to make bail, the future safety of a victim, law enforcement, and the community, and the defendant's citizenship and criminal history—including information obtained through the public safety report system. *See* TEX. CODE CRIM. PROC. art. 17.15.

Because it is clear from the record that the issue of whether Boyd was entitled to reduced bail based on the State's delay was raised, discussed, and ruled upon by the trial court, the issue is preserved for review. *See Bekendam v. State*, 441 S.W.3d 295, 301 (Tex. Crim. App. 2014).

**C.     Discussion**

Under article 17.151, the State had the initial burden to make a prima facie showing that it was ready for trial within 90 days after the start of Boyd's detention. *See Jones*, 803 S.W.2d at 717.  It is undisputed that Boyd was arrested on February 9, 2024.  Boyd was indicted on March 7, 2024, which was within the 90-day period under article 17.151. *See Lanclos*, 624 S.W.3d at 927 (timely charging instrument is an element of State's preparedness).

Notwithstanding, Boyd argues that the State did not meet its prima facie burden because it not only failed to announce that it was ready for trial during the statutory period—or announce retrospectively that it had been ready—but it affirmatively represented to the trial court that it was *not* ready for trial during that time. *See Jones*, 803 S.W.2d at 717.

In *Ex parte Lopez*, the Fourteenth Court of Appeals held that a timely filed indictment was insufficient to meet the State's prima facie burden when the State's own subsequent representations negated its readiness for trial. No. 14-24-00053-CR, 2024 WL 3198620, at *4 (Tex. App.—Houston [14th Dist.] June 27, 2024, no pet.)

8

(mem. op., not designated for publication). There, Lopez was indicted for capital murder and his bail was set at $300,000. *Id.* at *1. At a pretrial hearing, the State noted that DNA testing of the firearm at issue remained outstanding and that the evidence was not ready for trial. *Id.* Lopez, who had been in detention for six months, filed an application for a writ of habeas corpus, seeking relief under article 17.151. *Id.* at *2. He argued that the State had affirmatively represented that it was not ready for trial within 90 days of his detention. Thus, he was entitled to pretrial release on a personal bond or a reduction in his bail to $50,000—the amount his mother had testified the family could afford. *Id.*

The State argued in *Lopez* that its remarks had been misunderstood. *Id.* at *4. It had simply "belie[ved] that it wouldn't have been ideal to proceed" without the outstanding evidence. *Id.* at *2. The State urged: "[B]ut if the [trial court] so chooses to set the case for trial, the State *will be ready* . . . . The State *is ready to proceed under these circumstances at this time*." *Id.* (emphasis added). In denying habeas relief, the trial court concluded: "[I]t's not that the State isn't ready for trial; it's that the evidence that they've asked to be tested, there is some kind of backlog." *Id.*

On appeal in *Lopez*, the court concluded that there was no attempt by the State to show that it had been ready for trial within 90 days of Lopez's arrest. *Id.* at *4. At most, its remarks showed that it was ready for trial *at the time of the hearing—*

which was well after the 90-day period had expired and was therefore insufficient as a prima facie showing of readiness under article 17.151. *Id.*

Similarly here, at the hearing on Boyd's application for habeas relief, the State explained that the FBI was involved in the initial investigation of these cases, that it had submitted the "firearms" for testing "somewhere in Virginia," and that testing was incomplete. And the following discussion took place:

| | |
|---|---|
| [Defense]: | At this time [Boyd] would just ask the Court take judicial notice that we were set for announcement hearing on Tuesday of this week, August 19th. We approached. At first the Court was going to give us—or told us to be here for the Monday, September 8th trial docket. The State then informed the Court that they would not be ready and we were given two new dates [in January]. . . . And so we just ask the Court take judicial notice of that at this time. |
| THE COURT: | I remember the conversation. I don't know if taking judicial notice is the correct thing to do. I remember the conversation. You announced ready and you asked me what do I do next? Do I get a reset because the State is going to try something else on Monday. That's what I recall. |
| [Defense]: | No. You told me to be back here on Monday. |
| THE COURT: | Yeah. |
| [Defense]: | And I said, well, I don't believe the State is ready. Did you want us to approach on that? And so we did. *And the State informed you that they were not ready on this case.* |
| THE COURT: | *Right. . . .* |
| . . . . | |
| [State]: | The—from what I remember about what's going on here, or relating back to Tuesday, is there is no |

10

record of the State announcing not ready. So there is nothing formal. I think what we have is a misunderstanding. [Defense counsel] informed me he does not want to have the evidence tested or he could go to trial without having the evidence tested. *If that's the case*, the State *could be ready as well* without having the evidence tested.

I thought . . . generally, especially in a double homicide, most times—and it's my fault for being presumptuous—that the defense would actually want the evidence completely tested. But he said he could be prepared without needing that evidence to be tested. *So if that's the case, then in that case the State could move forward* as well without having the rest of the evidence tested. *And some of the evidence has been tested but not all of it.*

So . . . I am not announcing I'm not ready. I thought there was just a mis-communication. I was under the presumption that he would want to have that evidence completely tested.

[Defense]:  No. We discussed that, Your Honor. I specifically told him this is a self-defense case. I don't need the evidence tested. But we would want it. That would be great. I'm not going [to] join in any delay of this case whatsoever on testing. It doesn't need to be done to effectuate my defense on this case. It's about what happened inside this residence.

The State did come up here, and while maybe it didn't get put on the record, the Court directly asked him are you ready to proceed and no. And before that we were supposed to come back Monday, September 8th. At that point once the State announced not ready you told us to get new dates. . . .

(Emphasis added.)

11

Boyd then requested "either a PR bond or bail that he [could] make today due to the State's not readiness." The State replied: "Judge, again, *I think I am ready. With the understanding that, you know, there is not going to be an objection to any sort of lack of testing of evidence, you know. In that case we can be ready.* So I'm not announcing not ready." (Emphasis added.) The discussion continued:

[Defense]: Judge, when we were here on Tuesday the State represented to this Court that they were not ready. Despite their, I guess, statements today, that was not at all the conversation that we had. And they simply said that we were not ready. That doesn't change it. *They have got the burden to prove that they were ready in the situation and they told this Court they weren't. They had the ability to say they were ready on Tuesday but they did not.* . . .

. . . .

[State]: Judge, [defense counsel] references something that took place off of a record. The State has never stated on the official record that it was not ready. I come to you today. I believe what transpired Tuesday was just simply a misunderstanding, maybe my part. I know on my part. And quite honestly, a poor assumption on my part. I've been doing this a while. *I knew the evidence was not ready for trial.* I just assumed—and that's my fault for assuming—that [defense counsel] would want to have the . . . testing of the evidence complete before trial. After having that conversation, the State *can be ready. So I am announcing ready.* So I believe that negates any sort of idea that the State is not ready. We have the witnesses, been in touch with them, talked to them, interviewed them previously. We *can be ready* on Monday.

(Emphasis added.)

12

The State's remarks above are similar to those that the court of appeals rejected in *Lopez*. 2024 WL 3198620, at *4. These remarks, at most, show that the State *became ready for trial at the time of the hearing* in August 2025—some 560 days after Boyd's detention began. A showing of trial readiness after the 90-day period has expired is not sufficient under article 17.151. *See Jones*, 803 S.W.3d at 717 ("It is not enough that the State appear in open court after the running of the applicable period and declare itself *at that time* ready for trial." (emphasis added)).[6]

The State could have satisfied its burden by announcing retrospectively that it was ready within the allotted time. *See id.* But nothing about its statements at the hearing reasonably could be construed as communicating that the State was ready for trial within the 90-day period beginning with Boyd's detention in February 2024. *See Ex parte Lopez*, 2024 WL 3198620, at *4.[7]

---

[6] *See also Ex parte Lopez*, No. 01-17-00586-CR, 2018 WL 3384636, at *6 (Tex. App.—Houston [1st Dist.] July 12, 2018, no pet.) (mem. op., not designated for publication) (holding that State's announcement that it "can be ready for trial next week" and would be "ready for trial next week if you elect that date" did not constitute prima facie showing of readiness for trial within 90 days of detention).

[7] Two months *after* the trial court denied Boyd's application for habeas relief—and after Boyd appealed to this Court and filed his briefs in the appeal—the State executed an affidavit in which it retrospectively asserted that it was ready for trial within 90 days after Boyd's detention began. And the State filed its affidavit in a bill of exception in the trial court.

In reviewing whether the trial court abused its discretion in denying habeas relief, we cannot consider the affidavit. "[A]n appellate court's review of the record is generally limited to the evidence that was before the trial court at the time of the trial court's ruling." *Amador v. State*, 221 S.W.3d 666, 677 (Tex. Crim. App. 2007). "The purpose of a bill of exception[] is to preserve an error for appellate review."

Here, the record simply does not demonstrate that the State met its burden to make a prima facie showing that it was ready for trial within 90 days from the start of Boyd's detention. *See Ex parte Lopez*, 2018 WL 3384636, at *6. "Under the present circumstances, the trial court had only two options: either release [Boyd] on personal bond or reduce the required bail to an amount he could afford." *See Ex parte Lopez*, 2024 WL 3198620, at *4; *see also Ex parte Lanclos*, 624 S.W.3d at 927 ("Article 17.151 is mandatory."). Because the trial court did neither, we hold that it abused its discretion. *See Ex Parte Gill*, 413 S.W.3d at 431; *Ex parte Lopez*, 2018 WL 3384636, at *6.[8]

---

*Cloud v. State*, No. 01-05-00817-CR, 2007 WL 1228630, at *6 n.1 (Tex. App.—Houston [1st Dist.] Apr. 26, 2007, no pet.) (mem. op., not designated for publication); *see also* Tex. R. App. P. 33.2. For evidence to be properly included in a bill of exception, it must first have been offered during the trial proceedings. *Brandley v. State*, 691 S.W.2d 699, 707–08 (Tex. Crim. App. 1985). Here, the State did not offer its affidavit at the habeas hearing, or any other evidence on its retrospective readiness, and obtain a ruling excluding any such evidence. *See Currie v. State*, 692 S.W.2d 95, 97 (Tex. Crim. App. 1985) ("[A] formal bill of exception may be used to reflect an event or occurrence during the trial not otherwise shown by the record, but not an event that did not occur.").

[8] Because we sustain Boyd's second issue, we do not reach his first issue—in which he seeks a reduction in bail on other grounds.

**Conclusion**

We therefore reverse the trial court's order denying Boyd's pretrial application for a writ of habeas corpus and remand this case to the trial court for further proceedings consistent with this opinion.[9]

                                        Terry Adams
                                        Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[9]  *See, e.g.*, *Ex parte Lopez*, No. 14-24-00053-CR, 2024 WL 3198620, at *4 (Tex. App.—Houston [14th Dist.] June 27, 2024, no pet.) (mem. op., not designated for publication) (reversing and remanding); *Ex parte Lopez*, 2018 WL 3384636, at *6 (reversing and remanding). "Nothing in the mandatory language of article 17.151 precludes a judge from imposing a broad range of reasonable (and even creative) conditions of release designed to ensure victim and community safety like no-contact orders, house arrest, electronic monitoring, or daily reporting. Article 17.40 acknowledges that a judge need not turn a blind eye to potential safety concerns." *Ex Parte Gill*, 413 S.W.3d 425, 431 (Tex. Crim. App. 2013).